**Tim WILLIAMS, Plaintiff,**

v.

**SHARPLES COAL COMPANY, Defendant.**

**Civ. A. No. 2:87–0018.**

United States District Court, S.D. West Virginia, Charleston Division.

July 6, 1987.

Joseph C. Cometti, Charleston, W.Va., for plaintiff.

Larry W. Blalock, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending in this action is the Defendant's motion to dismiss. In that the Defendant has attached an exhibit to its motion which is outside the pleadings, the Court will convert the motion to one for summary judgment pursuant to *Rule* 56. The Plaintiff has responded to the motion and the Court now deems the matter mature for decision.

The Plaintiff, Tim Williams, seeks to vacate an arbitration decision rendered pursuant to the grievance and arbitration procedures contained in Article XXIII of the National Bituminous Coal Wage Agreement of 1981. The decision was issued on April 16, 1984, by Arbitrator Marvin Feldman. He rejected the Plaintiff's grievance challenging his unsuccessful effort to bid for a mobile equipment operator position in January of 1984. The Plaintiff's complaint in this action was filed on January 8, 1987.

The sole issue before the Court is what statute of limitations should be applied to the Plaintiff's action. The Plaintiff submits that the appropriate limitations period is five years—the period under West Virginia law for actions on oral contracts. *W.Va.Code*, § 55–2–6. The Defendant, on the other hand, urges that a six-month period should be applied.

The Defendant derives its six-month proposal from the holding in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Supreme Court therein held that so-called hybrid § 301 actions under *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), were subject to a six-month limitations period. A hybrid action is so named because it is one in which the employee sues his employer and union under different theories. He sues his employer for breach of the collective bargaining agreement and his union for breach of the duty of fair representation. Such a suit is the employee's method of circumventing the finality which is normally accorded to the parties' grievance system.

Prior to *DelCostello*, federal courts in hybrid actions would often borrow the state limitations period for vacating arbitration awards. *See e.g., United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). This cause of action was deemed to be most analogous to the hybrid § 301 action. In *DelCostello*, however, the Supreme Court abandoned this practice and instead decided that the six-month limitations period for filing unfair labor practices under § 10(b) of the NLRA was more appropriate. The Court found that the statute of limitations expressly applicable to § 10(b) was designed to accomodate a balance of interests very similar to those at stake in a § 301 hybrid action and that it presented a more apt analogy than the suggested state-law parallels. 462 U.S. at 169, 103 S.Ct. at 2293.

Unlike the actions in *DelCostello* and *Mitchell*, this is not a hybrid action. It is, as stated, an action to vacate the award of an arbitrator. As such it does not directly fall under the holding of *DelCostello*. And, it must be noted that the Supreme Court has not expanded its *DelCostello* holding to other types of § 301 actions.

Indeed, in *DelCostello* the Court distinguished and let stand its holding in *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), that the § 301 suit involved therein was governed by Indiana's six-year limitations period for actions on unwritten contracts. It is with this distinction in mind that the Plaintiff argues for application of West Virginia's five-year limitation period. For the reasons which follow, the Court chooses not to apply that lengthy period.

According to the *DelCostello* Court, "*Auto Workers v. Hoosier Cardinal Corp.* was a straightforward suit under § 301 ... for breach of a collective-bargaining agreement by an employer. Unlike the [*DelCostello* case], *Hoosier* did not involve any agreement to submit disputes to arbitration, and the suit was brought by the union itself rather than by an individual employee." *DelCostello*, 462 U.S. at 162, 103 S.Ct. at 2289. It is apparent, therefore, that the grounds upon which the Court distinguished *Hoosier* actually work against the Plaintiff here. This action does involve an agreement to submit disputes to arbitration. This feature is what the case is all about. Moreover, the suit is by an individual employee rather than the union.

The Supreme Court has expressed concern that the hybrid § 301 action amounts to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'" *Mitchell*, 451 U.S. at 66, 101 S.Ct. at 1565 (Stewart, J., concurring) (quoting *Hoosier*, 383 U.S. at 702, 86 S.Ct. at 1111). When it comes to the private settlement of disputes, the Supreme Court has placed an emphasis on finality.

> "[T]he grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union.... This system, with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision which has given 'meaning and content' to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later." *Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564.

Notwithstanding the guiding principles of *DelCostello* noted above, this Court must also note the Supreme Court's caveat elsewhere in that opinion that federal courts should not unhesitantly turn their backs on state law limitation periods in other contexts.

> "We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods any time state law fails to provide a perfect analogy.... On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods."

*Id.* at 171, 103 S.Ct. at 2294. In this vein, the Defendant points out that federal courts in § 301 suits to vacate arbitration awards have continued to apply state law limitation periods for vacating arbitration awards. *See e.g., Local 10 v. R.C.A. Global Communications*, 124 LRRM 2349 (S.D. N.Y.1986) [Available on WESTLAW, DCT database].

The complication which the Court confronts here is that West Virginia does not have an express limitations period for setting aside arbitration awards. Although West Virginia provides by statute for arbitration, and even provides expressly that an arbitration award may be set aside, *W.Va.Code*, § 55–10–4, the statutory scheme contains no limitations period. In addition, the limitations issue has not been addressed by the West Virginia Supreme Court. With this vacuum of authority, the parties propose, quite naturally, opposing solutions. The Plaintiff, as mentioned earlier, argues for a five-year limitations period. The Defendant, on the other hand, urges the Court to adopt the six-month limitations period of *DelCostello*.

The Defendant cites to the Court the case of *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir.1982), as an example of a federal court returning to federal law when there was no appropriate state statute of limitations available. The Defendant mischaracterizes the holding of *Badon,* however. In that decision—pre-*DelCostello*—the Sixth Circuit had to determine the limitations period for a hybrid action, not an action to vacate an arbitration award as the Defendant represents. Pursuant to the directives of *Mitchell,* the court looked to Michigan's statute of limitations for vacating arbitration awards. Unfortunately, Michigan, like West Virginia, did not have a statutory limitation period for such an action. The *Badon* court, finding no guidance in state law, then determined that the most analogous period was the six-month period found in § 10(b) of the NLRA. Hence, by a different route, and for different reasons, the *Badon* court arrived at the same result as the subsequent *DelCostello* decision.

Notwithstanding the distinctions between the *Badon* decision and this action, the Court does believe the methodology of the Sixth Circuit to be instructive. The six-month limitations period found in § 10(b) of the NLRA appears to be the best limitations period to apply in this instance. In essence, the Court just does not believe the five-year period, as advocated by the Plaintiff, to be consistent with the federal interest in promoting finality with regard to decisions in the work place. Neither is the Court convinced that the West Virginia court would choose a five-year limitations period given the emphasis which it too has placed in principles of finality with regard to arbitration generally. *See e.g., Clinton Water Ass'n. v. Farmers Const. Co.,* 163 W.Va. 85, 254 S.E.2d 692 (1979).

Perhaps one reason why the federal courts have been willing to borrow state periods for vacating arbitration awards is the relative brevity of those periods. In *Mitchell* the Supreme Court noted that of the "forty-two states with specific limitations periods for [actions to vacate arbitration awards], twenty-eight have a period of ninety days, nine have shorter periods, two longer, and three states have periods based on the term of court." 451 U.S. at 63 n. 5, 101 S.Ct. at 1564 n. 5. The adoption of a five-year statute of limitations, or even a two-year period,* would be contrary to this pattern and would frustrate the federal interest in speedy resolution of labor disputes. In short, the goals and purpose of federal substantive law cannot be subordinated in the search for procedural guidance from state law. In the words of the Supreme Court, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.

Having determined that a six-month limitations period is applicable, the Court now decides, without needless amplification, that the Plaintiff's action is untimely. The arbitration award which he seeks to vacate was issued on April 16, 1984. The complaint in this action was filed on January 8, 1987, some two years and eight months later. Hence, the action is untimely.

For the foregoing reasons, the Court will grant the Defendant's motion for summary judgment and will enter judgment in favor of the Defendant and against the Plaintiff on the Plaintiff's complaint.

---

* Some years before the *DelCostello* decision, Judge Christie held in *Jamison v. Olga Coal Co.,* 335 F.Supp. 454 (S.D.W.Va.1971), that hybrid actions under § 301 were governed by the two-year period of limitations for "personal actions" in *W.Va.Code,* § 55–2–12. Even if the Court were to adopt a two-year statute of limitations, the Plaintiff's action here would still be time barred.